## MEAD et al. v. SHELL PETROLEUM CORPORATION et al.

### No. 1617.

District Court, W. D. Oklahoma.

Sept. 15, 1936.

George F. Short, of Oklahoma City, Okl., for plaintiffs.

Twyford & Smith, of Oklahoma City, Okl., Horace B. Clay and Shell Bassett, both of Tulsa, Okl., and Howard Hopps, Keaton, Wells & Johnston, and W. R. Bleakmore, all of Oklahoma City, Okl., for defendants.

VAUGHT, District Judge.

On the 27th day of May, 1931, John Sinopoulo, one of the defendants herein, was the owner of Lots 1 and 2, Block 21, of Phillips and Mead East Side Addition to Oklahoma City, Oklahoma, said described property being within the limits of the municipality of Oklahoma City, Oklahoma, and on said date Sinopoulo executed an oil and gas lease to H. F. Wilcox Oil and Gas Company.

The lease has the usual provisions of the standard form oil and gas lease, among which are:

"In consideration of the premises the said lessee covenants and agrees:

"1. To deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect well on said land, the equal one-eighth (1/8) part of all oil produced and saved from the leased premises.

"2. To pay lessor one-eighth of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, etc."

The above described lots in area were less than one acre, and at the time of the execution of said lease there was in full force and effect Ordinance No. 3944 of Oklahoma City as amended, which provided among other things:

"C. In unplatted tracts no well shall be drilled or put down upon any block or tract of less than 5 acres in area, and in platted tracts no such well shall be drilled or

put down upon any block of less than 2½ acres in area except as otherwise provided. Before a permit shall be granted upon any platted block or unplatted tract of land which is adjoining, or contiguous to any unplatted tract of less than 5 acres or any platted block of less than 2½ acres in area, upon application of any owner, lessee or other interested person, firm or corporation in said unplatted tract of · less than 5 acres or platted block of less than 2½ acres, or in any adjoining or contiguous unplatted tracts or platted blocks aforesaid, the Board of Adjustment shall, upon giving notice and holding a hearing in the same manner as is provided for appeals from the Building Superintendent, attach said unplatted tract of less than 5 acres or platted block of less than 2½ acres, in whole or in part, to such contiguous or adjoining unplatted tract or tracts or platted block or blocks, for the purpose of permitting a well to be drilled in which said unplatted tract of less than 5 acres or platted block of less than 2½ acres, may participate. The said Board of Adjustment shall provide the pro-rata or ratable basis, on which the said unplatted tract of less than 5 acres or platted block of less than 2½ acres, shall participate in said well or wells, and in addition thereto shall make any equitable order in relation thereto which may be proper in order that substantial justice may be done. Any interested party affected by said order, may appeal to the District Court as provided by law.

\* \* \*

"E. That before any permit for the drilling or putting down of any petroleum or gas. well is issued, a written application therefor signed by the applicant or some person in his or its behalf duly authorized, shall be filed with the Superintendent of Buildings. Said application shall state the block and the exact lot and location thereon where the proposed well will be drilled and there shall be attached thereto either certified or photostatic copies of all leases or contracts with the owners of the property in such block or blocks which are controlled or owned by applicant, and in addition thereto, a certificate of title or titles or certificates from a bonded abstractor certifying the name of the last record owner of said property and the character of instrument or conveyance upon which the ownership rests, together with a statement showing the number of lots in said block or tract which the applicant holds under lease or contract from such owner. In addition thereto, there shall be attached to said application a map or plat showing all correct dimensions and the exact location of said proposed well or wells, together with tanks, pits, pipelines, embankments, fences and other details of the proposed use of such property necessary or incident to the drilling of said well, together with the correct measurements of said locations from the outside boundaries of said block. There shall also be attached to said application, a certificate showing the exact and correct acreage within said block or tract upon which any proposed well is to be drilled and the total acreage owned or controlled by the applicant in said block, which shall be duly certified by a competent engineer. There shall also accompany said application, in duplicate, a statement showing the names and last known addresses of all persons, firms or corporations having any interest in any property within such block or tract. Said application, with said certificates, aforesaid, attached thereto, shall be duly verified before an officer authorized to administer oaths within this State. If said application, together with the exhibits attached thereto, shows that the applicant is the owner or has under control or lease all of the property within such block or tract, the Superintendent of Buildings shall grant a permit therefor, provided that the application shows that it complies with all of the requirements of the City in relation to drilling within the U–7 use district. If said application shows that the applicant does not have the entire block or tract under lease but owns or controls or has under lease not less than 51% of all the property within such block or tract, upon appeal from the Superintendent of Buildings, the Board of Adjustment, after giving notice and conducting hearing as hereinafter provided, shall have authority to determine the equities and grant a proper permit for drilling a well upon such block or tract. Before granting said permit, said Board shall cause notice by registered mail to be given to all known owners not less than 10 days prior to the date and place of hearing, which shall be set out in said notice. If the address of any owners be unknown, upon affidavit duly filed setting out the inability on the part of the applicant to obtain service upon such unknown owner, the Board of Adjustment shall cause a notice to be given

by publication in not less than 5 issues of a legal daily paper, published in the City of Oklahoma City, proof of which must be filed before hearing said application, and shall describe the property affected upon which the application is to be heard, and shall fix the date of hearing thereon which shall not be less than 10 days after the date of the last publication, said notice shall be dated and signed by the Clerk of said Board. Upon such hearing, the Board shall examine all witnesses under oath and keep a record of its proceedings and shall have authority and shall make any requirements, regulations or orders which may be necessary, proper or equitable for all persons interested therein, and shall protect and safeguard the rights of all parties affected by such order. Any party affected by said order may appeal, as provided by law, to the District Court."

It is admitted that the said ordinance was in full force and effect at the time of the execution of the lease by Sinopoulo to the Wilcox Company.

The lease above described was assigned by H. F. Wilcox Oil and Gas Company to A. J. Diffie on the 29th day of May, 1931. Thereafter, on the 28th of June, 1931, an application was made by A. J. Diffie to the Building Superintendent of the city of Oklahoma City, Oklahoma, for permission to drill a test well for oil and gas on said Lots 1 and 2, Block 1, above described. The Building Superintendent denied the application for a permit on the grounds that said lots did not contain sufficient acreage to justify the issuance of a permit to drill thereon, as provided by the ordinance, said acreage being less than 2½ acres.

Immediately thereafter, an appeal was taken from the Building Superintendent to the Board of Adjustment and notice of said appeal was given, by the clerk to the Board of Adjustment, to all of the interested parties, including John Sinopoulo, and said cause was set for hearing by the Board of Adjustment for the 20th day of July, 1931.

On July 18, 1931, the owners of a strip of land adjoining Lots 1 and 2, Block 21, and lying immediately to the south thereof, known as the Rock Island right of way, the same being a strip of land approximately 100 feet in width and 490 feet in length, containing 62,350 square feet, petitioned the Board of Adjustment that said last named tract of land be added to Lots 1 and 2 and made a drilling area. At this hearing all of the interested parties, including John Sinopoulo, participated. Other property owners protested the granting of the permit, and on the 20th of July, 1931, hearing was had on the application of Diffie, the owner of Lots 1 and 2 above described, and the application of the owner of the Rock Island right of way, for a permit to drill on the two tracts of land as one drilling area. The Board of Adjustment, among other things, found that Lots 1 and 2, Block 21, contained less than one acre; that that portion of the Rock Island right of way lying adjacent to and sought in said petition to be attached to it, contained approximately one acre; that the area of both calculated together constituted less than 2½ acres; that said area was not sufficient to justify the granting of a permit to drill, under the ordinances of the city of Oklahoma City, and the permit was denied. The petitioning parties were given sixty days in which to file a motion for rehearing in the event neither of said tracts within the sixty day period had been attached to any other drilling area.

An appeal was taken from the decision of the Board of Adjustment, the defendant John Sinopoulo participating in said appeal. In due time the said case reached the District Court of Oklahoma County and on the 20th of November, 1931, said cause came on for trial and was heard before Judges Hooker and Hill. The court found, quoting from the opinion:

"The court further finds from an examination of the records herein that due and legal notice has been given to all parties and persons having any right, title or interest in and to the property involved herein together with adjacent property affected thereby, and that said court has jurisdiction to consider any and all questions in regard thereto, and make determination of all issues herein.

"The court further finds that all of such parties and persons above referred to, except those represented by counsel, are in default.

"The court further finds that by attaching the last above described portions of the land known as the right of way of the Chicago, Rock Island & Pacific Railroad Company, claimed to be owned by said parties above named, the plaintiff owns and holds a sufficient area of land and an oil and gas and mineral lease there-

on to authorize the drilling of one oil and/or gas well thereon under the statutes of the state and ordinances of the City of Oklahoma City in such cases made and provided.

"The court further finds that the plaintiff has complied with all of the ordinances of the City of Oklahoma City in reference to making applications for a permit to drill an oil and/or gas well on the premises above described, as prayed for in the application for a permit, and that all of the allegations in said application are fully sustained by the evidence, and that said permit should be granted as prayed for in said application and as hereinafter provided.

"It is therefore considered, ordered, adjudged and decreed that a permit for the drilling of one oil and/or gas well be granted to the plaintiff herein and its assignee, A. J. Diffie, upon the following described premises situated in Oklahoma County, State of Oklahoma, to-wit:

"Lots 1 and 2, Block 21, Phillips & Mead East Side Addition to Oklahoma City, Oklahoma County, Oklahoma.

"Also there is attached thereto, as a part of said area: That part of the Southeast Quarter (SE¼) of Section 34, Township 12, Range 3 West, in Oklahoma County, Oklahoma, as follows, to-wit:

"Commencing at a point 20 feet due south of the southwest corner of Block 20 Phillips and Mead East Side Addition to Oklahoma City, Oklahoma, where the same intersects the north line of the right-of-way of the Chicago, Rock Island & Pacific Railroad Company; thence due south 100 feet to the south line of said right-of-way; thence west along the south line of said right-of-way 490 feet; thence due north 100 feet to the north line of said right-of-way; thence east along the north line of said right-of-way 490 feet to the point or place of beginning, the same being and lying directly south of Block 21, Phillips & Mead East Side Addition to Oklahoma City, Oklahoma, and containing 49,000 square feet.

"It is further ordered, adjudged and decreed that said area last above described constitutes the entire area and drilling block for and upon which a permit is hereby granted to the plaintiff and its assignees for the drilling of one oil and/or gas well thereon.

"It is further ordered, adjudged and decreed that the owners of the fee simple title to said last above described real estate shall participate in the one-eighth royalty provided for in the oil and gas and mining lease owned and held by the plaintiff and A. J. Diffie upon and covering said lots 1 and 2 block 21, Phillips & Mead East Side Addition to Oklahoma City, Oklahoma, of any oil and/or gas produced and sold therefrom in the proportion and ratio their respective ownerships bear to the total area hereinabove described and included within the drilling area for said permit."

The judgment of the District Court of Oklahoma County was never appealed from and constitutes a final judgment of that court.

The defendant A. J. Diffie began the drilling of a well on said property on March 1, 1932, locating the well on Lots 1 and 2, Block 21, and completed said drilling on May 26, 1932, which resulted in an unusually large well. After the well was brought to production and the oil therefrom was delivered to the pipe lines of Shell Petroleum Corporation, the pipe-line company made disbursements of the proceeds in accordance with the judgment rendered in the District Court of Oklahoma County, dividing the one-eighth royalty among the property owners in the proportion that the area owned by each bore to the total area of the drilling tract.

All matters in controversy have been determined except the controversy between A. J. Diffie, the owner of the working interest in said well, and the defendant John Sinopoulo. The contention of Sinopoulo is that, under his lease, he is entitled to the full one-eighth royalty, that is one-eighth of the total production of said well, and that any payments made to the other property owners, included within said drilling area, must be paid out of the working interest of said well.

It is the contention of Diffie that the lease was entered into in good faith but that no well was ever drilled under the original lease; that the city refused to issue a permit to drill the well on less than 2½ acres of land; that the District Court of Oklahoma County, after a full hearing on appeal to said court, granted the permit. He further contends that the property known as the Sinopoulo property containing less than one acre

and the property described as the Rock Island property and situated immediately south of the Sinopoulo property which contained approximately one acre, were so situated that they could not be attached to any other drilling areas, and that therefore the owners of the two tracts above described would lose valuable property rights if they were not permitted to drill a well; that the District Court permitted the well to be drilled on both tracts as one drilling area and the royalty interest, provided in the lease from Sinopoulo to the Wilcox Company and later assigned to Diffie belonged to the landowners within the area described as the drilling area and that all of the landowners should participate in the one-eighth royalty originally provided in the lease by Sinopoulo to the Wilcox Company.

There was some correspondence between the attorneys for Sinopoulo and the Wilcox Oil and Gas Company, under date of September 28, 1931, prior to the action of the District Court of Oklahoma County, and after said decision thereon December 28, in which Sinopoulo contended he was entitled to the full one-eighth royalty.

The question, therefore, before the court and the only question submitted in this trial, is whether or not Sinopoulo is entitled to full one-eighth royalty or whether, under the judgment of the District Court of Oklahoma County, he is required to share the one-eighth royalty with the other property owners within the drilling area.

The court has examined the briefs filed in this case with much care. The contention of Sinopoulo is that he has a written contract with the Wilcox Company which provides for a full one-eighth royalty and that therefore he is not bound by the action of the District Court and is entitled to his full one-eighth royalty regardless of the proceedings which were had prior to the granting of the permit. It is also his contention that representations were made to him by the Wilcox Company and its agents, that they could procure a permit, yet it is admitted that at the time of the execution of this oil and gas lease by Sinopoulo, the ordinance in Oklahoma City was in full force and effect providing that no permit should be granted to drill on a tract of less than 2½ acres. When a contract is made which is in direct conflict with an ordinance, and such fact is known to the parties, are the provisions of such a contract enforceable? The lease was assigned by the Wilcox Company to Diffie and there certainly could be no question of the good faith of Diffie. He immediately applied for a permit and the judgment of the District Court of Oklahoma County finds that all of the provisions of the ordinance were complied with by Diffie; that is, that the application was duly filed and all the information furnished to the Building Superintendent which is required, under the ordinance. The Building Superintendent denied the permit and an appeal was taken immediately to the Board of Adjustment. This Board considered the application for a permit in connection with additional land to the south, known as the right of way property. However, the two tracts when joined constituted less than two acres and still failed to meet the requirements of the ordinance. The permit was denied. However, the Board of Adjustment held out hope, in that it provided in its ruling that, if at the end of sixty days neither of these tracts had been attached to any other drilling area, but remained apart and surrounded by drilling areas, the owners could file an application to reopen the case.

All of the parties in interest in this matter joined in the appeal to the District Court and all were present at that hearing. The record discloses that Sinopoulo was there in person and testified in that case. Nobody appealed.

The court, therefore, is of the opinion that the judgment of the District Court of Oklahoma County is a final judgment, is binding upon all the parties participating in said cause, and that under the terms and conditions of said judgment, the one-eighth royalty provided for in said lease should be distributed among Sinopoulo and the other property owners in the proportion that the area of the property owned by each of said parties bears to the total area contained in the drilling tract.

Findings of fact and conclusions of law may be submitted in accordance with the opinion expressed herein. The costs of this action will be assessed against the defendant John Sinopoulo. An exception is allowed the defendant Sinopoulo.